UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

DARBY JEAN BIANCHET,

    Plaintiff,

v.                                             Case No:   6:14-cv-415-Orl-DNF

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

## OPINION AND ORDER

This cause is before the Court on Plaintiff's Complaint (Doc. 1) filed on March 14, 2014. Plaintiff, Darby Jean Bianchet seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for a period of disability and disability insurance benefits. The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda in support of their positions. For the reasons set out herein, the decision of the Commissioner is **reversed and remanded** pursuant to §205(g) of the Social Security Act, 42 U.S.C. §405(g).

### I. Social Security Act Eligibility, the ALJ Decision, and Standard of Review

### A. Eligibility

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§416(i), 423(d)(1)(A), 1382(a)(3)(A); 20 C.F.R. §§404.1505, 416.905.  The impairment must be severe, making the claimant unable to do her previous work, or any other

substantial gainful activity which exists in the national economy. 42 U.S.C. §§423(d)(2), 1382(a)(3); 20 C.F.R. §§404.1505 - 404.1511, 416.905 - 416.911. Plaintiff bears the burden of persuasion through step four, while at step five the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146, n.5 (1987).

### B. Procedural History

On December 8, 2010, Plaintiff filed an application for disability and disability insurance benefits asserting a disability onset date of November 1, 2010. (Tr. p. 126-129). Plaintiff's application was denied initially on April 6, 2011, and denied upon reconsideration on July 19, 2011. (Tr. p. 70, 71). A hearing was held before Administrative Law Judge William H. Greer on December 14, 2012. (Tr. p. 25-61). The ALJ issued an unfavorable decision January 25, 2013. (Tr. p. 12-21). On January 14, 2014, the Appeals Council denied Plaintiff's request for review. (Tr. p. 1-3). Plaintiff filed a Complaint (Doc. 1) in the United States District Court on March 14, 2014. This case is now ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (Doc.12).

### C. Summary of the ALJ's Decision

An ALJ must follow a five-step sequential evaluation process to determine if a claimant has proven that he is disabled. *Packer v. Commissioner of Social Security*, 542 F. App'x 890, 891 (11th Cir. 2013)[1] (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)). An ALJ must determine whether the claimant (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in

---

[1] Unpublished opinions may be cited as persuasive on a particular point. The Court does not rely on unpublished opinions as precedent. Citation to unpublished opinions on or after January 1, 2007 is expressly permitted under Rule 31.1, Fed. R. Ap. P. Unpublished opinions may be cited as persuasive authority pursuant to the Eleventh Circuit Rules. 11th Cir. R. 36-2.

20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform his past relevant work; and (5) can perform other work of the sort found in the national economy. *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004). The claimant has the burden of proof through step four and then the burden shifts to the Commissioner at step five. *Hines-Sharp v. Commissioner of Soc. Sec.*, 511 F. App'x 913, 915 n.2 (11th Cir. 2013).

The ALJ determined that Plaintiff met the Social Security Act's insured status requirements through December 31, 2014. (Tr. p. 14). At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since November 1, 2010, the alleged onset date. (Tr. p. 14). At step two, the ALJ found that the Plaintiff suffered from the following severe impairments: disorders of the back, including degenerative disc disease; sciatica; and brachial neuritis; and obesity, citing 20 C.F.R. §n 404.1520(c). (Tr. p. 14). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525 and 404.1526. (Tr. p. 15). At step 4, the ALJ determined that the Plaintiff has the residual functional capacity ("RFC") to perform sedentary work with limitations. The ALJ determined that Plaintiff can sit for 7 hours in an 8-hour workday, without interruption for 1 hour; stand for 2 hours in an 8-hour workday, without interruption for 15 minutes, or walk for 2 hours in an 8-hour workday, without interruption for 15 minutes; can ambulate with a simple cane; can occasionally lift 10 pounds and can frequently lift 5 pounds; can occasionally bend, stoop, crouch, kneel, reach above shoulder level, and climb stairs; Plaintiff cannot crawl or climb ladders, ropes or scaffolds; and Plaintiff cannot work around unprotected heights or moving/hazardous machinery. (Tr. p. 15). The ALJ found that Plaintiff is not capable of performing her past relevant as a small parts

assembler, shipping and receiving clerk, shipping and receiving supervisor, or buyer. (Tr. p. 19). The ALJ found that Plaintiff was closely approaching advanced age on the date of her alleged disability onset date, had at least a high school education, and had acquired work skills from her past relevant work. (Tr. p. 19). The ALJ determined that after considering Plaintiff's age, education, work experience, RFC, acquired work skills, and the testimony of a vocational expert, Plaintiff was able to perform the job of assistant buyer, D.O.T. # 249.367-066, classified as sedentary, semi-skilled with an SVP of 4. (Tr. p. 20). The ALJ concluded that even though Plaintiff was unable to perform a full range of sedentary work, considering her age, education, and transferable work skills, he found her to be "not disabled" from November 1, 2010 through the date of his decision. (Tr. p. 20-21).

**D. Standard of Review**

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales,* 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. §405(g). Substantial evidence is more than a scintilla; i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson*, 402 U.S. at 401.

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.

*Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote,* 67 F.3d at 1560; *accord*, *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

### II. Analysis

Plaintiff raises three arguments on appeal. As stated by Plaintiff they are:

1) The ALJ failed to state good cause for rejecting the opinions of Dr. Herdel, a treating physician.

2) The ALJ erred in failing to state the weight, if any, given to the opinions of Dr. Lecheler, Ms. Bianchet's treating podiatrist.

3) The ALJ failed to apply the Eleventh Circuit pain standard and failed to make an appropriate credibility determination.

### A.   Whether ALJ Erred in Failing to Mention Dr. Lecheler

Plaintiff argues that the ALJ erred by failing to even mention the records of Fred A. Lecheler, D.P.M.[2] Plaintiff contends that Dr. Lecheler was Plaintiff's treating podiatrist and an acceptable medical source, however, the ALJ failed to mention any of Dr. Lecheler's reports, diagnoses or prognoses in his Decision or assign a weight to Dr. Lecheler's opinion. The Commissioner responds that the ALJ's error in not mentioning Dr. Lecheler was harmless because Dr. Lecheler's opinion was consistent with Dr. Barber's opinion, and the ALJ gave great weight to Dr. Barber's opinion.

---

[2] A licensed podiatrist is considered an acceptable medical source to establish an impairment of the foot, or foot and ankle depending on the limits of the licensure from the State in which the podiatrist practices. 20 C.F.R. § 404.1513(a)(4).

Alvan Barber, M.D. conducted an Independent Medical Examination of Plaintiff on March 30, 2011. (Tr. p. 236). Dr. Barber noted that Plaintiff used a cane. (Tr. p. 236). Plaintiff reported that she had degenerative disc disease and arthritis diagnosed in the 1990s, and is under the care of Dr. Herdel for pain medication. (Tr. p. 236). Plaintiff reported she had bone spurs in her neck and left heel area, and received an injection in her left heel under the care of Dr. Huggard in 2010, and received pain medication from Dr. Herdel. (Tr. p. 237). Plaintiff also report that she has hypertension, an enlarged heart, and Barrett's esophagitis. (Tr. p. 237). Dr. Barber found Plaintiff to have 5/5 muscle strength in right and left lower extremities. (Tr. p. 240). Plaintiff's gait was slow with a left limp and the use of a cane. (Tr. p. 240). Plaintiff was unable to walk on toes or heels. (Tr. p. 240). Plaintiff was able to walk 20 feet without use of a cane. (Tr. p. 240). Dr. Barber's impression as to Plaintiff's feet was that she had a history of heel spurs in the left foot, and the injection therapy showed improvement. (Tr. p. 241). Dr. Barber found Plaintiff's functional ability to be that she cannot walk or stand for long periods of time, and she cannot walk long distances without an assistive device. (Tr. p. 241).

Over a year after Dr. Barber conducted his independent medical examination, Plaintiff went to Fred Lecheler, D.P.M. on July 5, 2012. (Tr. p. 288). Plaintiff complained of sharp and aching pains to the outside of her right 5th metatarsal phalangeal joint, with a bump on the side of her foot. (Tr. p. 288). Plaintiff claimed that the pain had been getting worse for the last 9 months. The pain increased with ambulation, activity, and pressure from a shoe. (Tr. p. 288). Plaintiff's pain level was a 9 out of 10. (Tr. p. 288). Plaintiff has a sharp and burning pain to the ball of the foot radiating into the digits in her right foot from the dorsal common digital nerve over the dorsal aspect of the right third metatarsal space. (Tr. p. 288). Plaintiff experienced burning pain, especially at night, with a pain level of 9 out of 10, and the pain increased with stooping, activities

on the balls of the feet, and being on the toes. (Tr. p. 288). Plaintiff stated that this condition had worsened over the last 8 months. Dr. Lecheler diagnosed Plaintiff with Tailor's bunion and neuroma in the right foot. (Tr. p. 288). Plaintiff's x-rays revealed a medially deviated 5th digit, laterally deviated 5th metatarsal, and a bony prominence present to dorsal-lateral aspect of 5th metatarsal head. (Tr. p. 289). Dr. Lecheler gave Plaintiff a peripheral nerve block to the dorsal common digital nerve on the right third intermetarsal space. (Tr. p. 289).

Plaintiff saw Dr. Lecheler on July 19, 2012. Plaintiff stated that she did not find relief from the previous treatment and requested additional treatment. (Tr. p. 286). Dr. Lecheler found neuroma of the right foot. (Tr. p. 286). Plaintiff complained of burning pain at night with a pain level of 6 out of 10 on her visit. (Tr. p. 286). Dr. Lecheler recommended accommodative padding and a nerve block, and Plaintiff received a nerve block to the dorsal common digital nerve. (Tr. p. 287). On September 4, 2012, Plaintiff returned to Dr. Lecheler complaining of pain on the outside of right foot from Tailor's bunion, with a pain level of 7 out of 10. (Tr. p. 284). Dr. Lecheler advised Plaintiff to obtain more supportive, roomier shoes, and provided pre-fabricated orthotics. (Tr. p. 285). Plaintiff returned on September 12, 2012 complaining of aching and occasional sharp pain with a pain level of 4 out of 10. (Tr. p. 282). Dr. Lecheler gave her an injection and discussed bunion surgery. (Tr. p. 283). On September 26, 2012, Plaintiff saw Dr. Lecheler again for irritation to the plantar fascia over the plantar aspect of the right arch. (Tr. p. 280). Dr. Lecheler diagnosed Plaintiff with plantar fasciitis on the right. (Tr. p. 280). Dr. Lecheler wrapped her right foot to stabilize the area. (Tr. p. 280).

Plaintiff had gotten an MRI of her right foot on October 24, 2012, and Dr. Lecheler reviewed the findings with Plaintiff on October 31, 2012. (Tr. p. 277, 278). The MRI indicated tenosynovitis or bursitis in the tibialis anterior tendon. (Tr. p. 278). Plaintiff complained of pain

and occasional deep pain to the tibialis anterior tendon over the dorsal of the foot. (Tr. p. 278). Plaintiff also complained of some swelling and tightness to the foot, with the pain worsening over the past 7 weeks. (Tr. p. 278). Plaintiff stated that the pain in the left and right foot had been a gradual onset which had worsened over time, and increased with ambulation, activity, and pressure from shoes. (Tr. p. 278). Plaintiff's pain level at the visit was 2 out of 10. (Tr. p. 278). Upon examination, Dr. Lecheler found minimal erythema and edema but increased pain with range of motion of foot, ankle, and lower leg, as well pain on palpation, and irritation greatest to the tibialis anterior tendon over the dorsal aspect of the right calcaneus. (Tr. p. 278). Dr. Lecheler found a mild decrease in strength, a decreased arch height, and an increased hyperpronation resulting for excessing pulling or stress to the posterior tibial tendon. (Tr. p. 278). Dr. Lecheler instructed Plaintiff to rest and elevate her foot and to wear orthotics, and limited her to mild ambulation only. (Tr. p. 279).

In his Decision, the ALJ did limit Plaintiff to being able to stand for 2 hours in an 8-hour workday, without interruption for 15 minutes or walk for 2 hours in an 8-hour workday, without interruption for 15 minutes. (Tr. p. 15). The ALJ further noted that Plaintiff could ambulate with a simple cane. (Tr. p. 15). The ALJ noted that Dr. Barber found that Plaintiff could not walk or stand for long periods and could not walk long distances without an assistive device. (Tr. p. 17). The ALJ accounted for the limitation found by Dr. Barber in his RFC by limiting Plaintiff to standing or walking for only 2 hours in an 8-hour workday, and without interruption for 15 minutes at a time. (Tr. p. 17).

Plaintiff argues that the ALJ erred in failing to mention Dr. Lecheler in the Decision. The Commissioner argues that it was harmless error because the ALJ included limitations as to walking and standing by accepting Dr. Barber's opinion. An ALJ is required to consider all of the

evidence in the case record when he makes his determination. 20 C.F.R. §404.1520(a), *Brunson v. Astrue*, 850 F. Supp.2d 1293, 1304 (M.D. Fla. 2011). An ALJ must consider the medical opinions that were submitted in the record as well as other relevant evidence. 20 C.F.R. §404.1527(b). Medical opinions are statements from physicians and may include a claimant's symptoms, diagnosis and prognosis. 20 C.F.R. §404.1527(a)(2). The ALJ is required to "state with particularity the weight he gave the different medical opinions and the reasons therefore." *Sharfarz v. Bowen*, 825 F.2d 278, 279-80 (11th Cir. 1987, *See also, Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011)). Without such a statement by the ALJ, a court cannot determine if the merits of a claim are rational and supported by substantial evidence. *Winschel*, 631 F.3d at 1179. An ALJ may disregard an opinion of a treating physician, however, he must articulate clear reasons for disregarding an opinion. *Winschel*, 631 F.3d at 1179.

The Eleventh Circuit has found in unpublished cases that even though an ALJ does not explicitly state the weight he affords a medical opinion, if the opinion does not contradict the ALJ's findings, then this error is harmless. *Wright v. Barnhart,* 153 F. App'x 678, 684 (11th Cir. 2005), See also, *Gorr v. Colvin*, 2013 WL 4855060, *6 (M.D. Fla. Sept. 11, 2013) (citing *Caldwell v. Barnhart*, 261 F. App'x 188, 190 (11th Cir.2008) ("An ALJ's failure to state with particularity the weight given different medical opinions is reversible error. When, however, an incorrect application of the regulations results in harmless error because the correct application would not contradict the ALJ's ultimate findings, the ALJ's decision will stand.") (citations omitted); *Miller v. Barnhart*, 182 F. App'x 959, 964 (11th Cir.2006) (recognizing harmless error analysis in the context of an ALJ's failure to address a treating source's opinion); *Wright v. Barnhart,* 153 F. App'x 678, 684 (11th Cir.2005) (providing that the ALJ's failure to indicate the weight given to certain physicians was harmless error because those opinions did not directly contradict the ALJ's

findings); see also *Parton v. Astrue*, No. 3:07–CV–63–J–TEM, 2008 WL 897094 (M.D. Fla. Mar.31, 2008) (finding ALJ's failure to address a treating physician's opinion was harmless error because fully crediting the opinion would not have changed the outcome)).

The Court recognizes that the ALJ did include limitations as to Plaintiff's ability to stand and walk. However, Dr. Barber's opinion as to Plaintiff's limitations only included her limitations as to her left side. Dr. Lecheler treated Plaintiff's right foot problems. Dr. Barber did not consider any limitations as to Plaintiff's ability to walk or stand as it relates to Plaintiff's right side. Further, the ALJ failed to consider Plaintiff's impairments as to her right foot in combination with Plaintiff's other impairments. Without the ALJ considering Dr. Lecheler's records, the Court cannot determine if the merits of the claim are rational and supported by substantial evidence. *Winschel*, 631 F.3d at 1179. Given the ALJ's lack of mentioning the medical records, prognosis, and diagnosis of Dr. Lecheler, the Court is unable to conduct a meaningful judicial review of the ALJ's opinion concerning his conclusion that Plaintiff has the ability to walk or stand for 2 hours in an 8-hour day, without interruption for 15 minutes at a time, or if she had any additional limitations due to her impairments as to her right foot. *Robinson v. Astrue,* 2009 WL 2386058, at *4 (M.D. Fla. Aug. 3, 2009). The Court finds that the ALJ erred in failing to consider Dr. Lecheler opinion, prognosis and diagnosis, and this error was not harmless.

### B. Plaintiff's Remaining Arguments

Plaintiff's remaining arguments focus on whether the ALJ erred in the weight he afforded Dr. Herdel's opinion and whether the ALJ erred in determining that Plaintiff's intensity, persistence and limiting effects of her symptoms were not entirely credible. The weight afforded the medical prognosis, diagnosis, and medical records of Dr. Lecheler must be

considered and his findings as to Plaintiff's limitations must be considered in combination with Plaintiff's other medical records and her limitations. This evidence impacts the Court's analysis of both Plaintiff's limitations as set forth by Dr. Herdel and her credibility, and therefore, a decision on these other issues is premature at this time.

### III. Conclusion

Upon consideration of the submissions of the parties and the administrative record, the Court finds that the Decision of the ALJ was not supported by substantial evidence.

**IT IS HEREBY ORDERED:**

1) The decision of the Commissioner is **REVERSED and REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for the Commissioner to consider the medical records of Dr. Lecheler, to reconsider the medical records of Dr. Herdel, and to reconsider Plaintiff's credibility.

2) If Plaintiff prevails in this case on remand, the Plaintiff must comply with the Order (Doc. 1) entered on November 14, 2012, in Misc. Case No. 6:12-mc-124-Orl-22.

3) The Clerk of Court is directed to enter judgment accordingly, terminate any pending motions and deadlines, and close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on March 12, 2015.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties